*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0084p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

FATJON STERKAJ; AMEMONA SOKOLI-STERKAJ,
        *Petitioners,*

    *v.*

ALBERTO R. GONZALES, Attorney General,
        *Respondent.*

No. 04-4232

---

On Petition for Review of an Order of the
Board of Immigration Appeals.
Nos. A75 459 910; A75 459 911.

Argued: January 24, 2006

Decided and Filed: March 3, 2006

Before: SILER, SUTTON, and COOK, Circuit Judges.

---

## COUNSEL

**ARGUED:** Russell R. Abrutyn, MARSHAL E. HYMAN & ASSOCIATES, Troy, Michigan, for Petitioner. Keith I. Bernstein, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Russell R. Abrutyn, Marshal E. Hyman, MARSHAL E. HYMAN & ASSOCIATES, Troy, Michigan, for Petitioner. Keith I. Bernstein, Emily Anne Radford, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

## OPINION

---

    COOK, Circuit Judge. Fatjon Sterkaj and his wife Amemona Sokoli-Sterkaj[1] seek review of a final order of the Board of Immigration Appeals (BIA) summarily affirming the Immigration Judge's (IJ) decision to deny their application for asylum and withholding of removal under the Immigration and Nationality Act (INA). Mr. Sterkaj challenges the IJ's adverse-credibility and frivolous-application findings and asserts that the BIA denied him due process by relying on an inaccurate transcript to review his case and by affirming the IJ's decision without opinion. Concluding that substantial evidence supports the IJ's findings and discerning no due process violation, we deny the petition for review.

---

[1]Mr. Sterkaj is the principal asylum applicant, and his wife is a derivative applicant relying on his application. *See* 8 U.S.C. § 1158(b)(3)(A).

I. Background

Fatjon Sterkaj and his wife Amemona Sokoli-Sterkaj, Albanian citizens, fled Albania in September 1998 and entered the United States without valid entry documents. The Immigration and Nationalization Service (INS) sought their removal on two grounds: (1) they attempted to procure admission by fraud or willful misrepresentation of a material fact under 8 U.S.C. § 1182(a)(6)(C)(i) and (2) they did not have valid entry documents as required by 8 U.S.C. § 1182(a)(7)(A)(i)(I). The Sterkajs admitted that they entered the United States without valid entry documents, but denied that they sought to procure admission by fraud or willful misrepresentation of a material fact. They applied for asylum and withholding of removal on the grounds that Mr. Sterkaj suffered past political persecution in Albania and had a well-founded fear of future persecution should he return. At the removal hearing, Mr. Sterkaj described the following events to support his claim.

Mr. Sterkaj attended the Democratic Party (DP) rallies in Albania but was not a member. During a February 1998 rally, "special forces" police interrupted the rally, hitting and arresting DP supporters, including Mr. Sterkaj. The police detained him at the police station for three days, beating him repeatedly and denying him food and water. After the three days, they released Mr. Sterkaj, and he sought medical treatment at a hospital.

A month later police went to his parents' house late at night looking for him, but Mr. Sterkaj was at his wife's house. The police broke down the door to his parents' home and hit his father's head with a gun butt. Upon learning what happened to his father, Mr. Sterkaj fled to his uncle's house.

As Mr. Sterkaj drove to his uncle's house, police pursued him and shot at his car, injuring him and forcing him off the road. He then ran from his car to a nearby forest where he hid from police and eventually arrived at his uncle's house. Soon thereafter, Mr. Sterkaj and his wife fled to the United States.

The IJ conducted a hearing on the merits of Mr. Sterkaj's application. Mr. Sterkaj testified about two documents he submitted to support his claim—a summons from the Shkodra, Albania district attorney's office (summons) and a document declaring that Albanian authorities "wanted" Mrs. Sterkaj ("wanted" document). Mr. Sterkaj initially testified that his troubles with the Albanian authorities began on February 20, 1998. But on cross-examination, the government pointed out to Mr. Sterkaj that the "wanted" document was dated February 10, 1998, and proclaimed that Albanian authorities had pursued Mrs. Sterkaj since September 20, 1997. In light of this discrepancy, the government questioned both documents' authenticity, and the IJ agreed to adjourn the hearing so that the government could verify the documents.

Three years later, the IJ reconvened the hearing and reported that an investigation by Mr. Ceci of the U.S. Embassy in Tirana, Albania revealed that the summons was invalid. (The government apparently did not submit the "wanted" document for verification.) The IJ concluded that Mr. Sterkaj failed to establish a credible claim for relief, citing the Embassy's report, Mr. Sterkaj's discrepant testimony regarding the "wanted" document, his claim's general implausibility, and his claim's inconsistency with U.S. State Department reports on conditions in Albania. The IJ also concluded that Mr. Sterkaj's application was frivolous.

This petition for review followed the decision by a single member of the BIA summarily affirming the IJ's decision. Thus we review the IJ's decision as the final agency decision. *Denko v. INS*, 351 F.3d 717, 726 (6th Cir. 2003).

## II. Discussion

### A. Adverse Credibility Determination

Mr. Sterkaj challenges the IJ's finding that his testimony of past persecution lacked credibility. We apply the usual substantial evidence standard to the IJ's credibility determination, ensuring that specific reasons going "to the heart of the applicant's claim" support an adverse credibility finding. *Sylla v. INS,* 388 F.3d 924, 926 (6th Cir. 2004). Applying this standard to the Sterkajs' case, we conclude that substantial evidence supports the IJ's adverse credibility determination.

First, the IJ found it implausible that the police detained Mr. Sterkaj, attacked his father, and destroyed his home when he was a mere DP supporter. Second, the IJ noted that Mr. Sterkaj's testimony conflicted with U.S. State Department Profiles of Asylum Claims and Country Conditions for Albania, which indicated that "there is no post[-]communist tradition of retribution against opposition party members," and that "[i]individuals are rarely targeted on political grounds." Third, the IJ found the summons and "wanted" document submitted by Mr. Sterkaj unreliable. We discuss Mr. Sterkaj's arguments as to each of these three findings.

### 1. Implausibility of Sterkaj's Claim

First, the IJ found it implausible that Albanian law enforcement authorities would detain and beat Mr. Sterkaj for merely supporting (as opposed to being a member of) the DP. Although the country-conditions reports do not *contradict* Mr. Sterkaj's claim of political persecution, they "expressly state[] that there has been little to no political persecution in Albania since the collapse of the communist regime in 1990 . . . and note[] that even 'during the dark days of 1997' all parties were able to participate in politics without mistreatment." *Sulollari v. Gonzales*, No. 04-4237, 2005 WL 3275500, at *3 (6th Cir. Dec. 5, 2005). Viewing Mr. Sterkaj's claim in light of these reports, we find the IJ's skepticism about the arrest and beatings reasonable; the record evidence does not compel a contrary conclusion.

### 2. U.S. State Department Reports

Mr. Sterkaj also challenges the IJ's finding that his claim of political persecution conflicts with Albania's country conditions as described in the 1998 and 2001 U.S. State Department Profiles of Asylum Claims and Country Conditions for Albania. He first contends that the IJ erred in relying on the 2001 report, because he testified to, and based his claim on, events that occurred in 1998. Assuming the IJ erred in relying on the 2001 report, the 1998 Country Report on Human Rights Practices for Albania, upon which the IJ also relied, nonetheless provides substantial evidence to support the IJ's finding.

That report relayed that although "opposition political leaders frequently charged that the Government arbitrarily arrested and detained its supporters on political grounds[,] [t]here is little solid evidence to back up these claims, and most international observers believe they are baseless." It adds that despite a November 10 incident when police arrested three DP supporters, "[t]here were no clear cases of detainees being held for strictly political reasons." U.S. State Department reports, which "are generally the best source of information on conditions in foreign nations," *Mullai v. Ashcroft*, 385 F.3d 635, 639 (6th Cir. 2004) (quotation omitted), provide context about Albania so that the fact finder may assess Mr. Sterkaj's credibility. *See Duarte de Guinac v. INS*, 179 F.3d 1156, 1162 (9th Cir. 1999). Though, as Mr. Sterkaj points out, the reports do not rule out the existence of political persecution in Albania, we do not quarrel with the IJ's assessment that they are inconsistent with, and thus undermine, Mr. Sterkaj's claim. No evidence compels us to reach a factual conclusion contrary to that reached by the IJ.

### 3. Fraudulent Documents

Mr. Sterkaj next protests the IJ's finding that his submission of the summons and "wanted" document impaired his credibility. An applicant's presentation of "a fraudulent document 'to prove a central element of the claim in an asylum adjudication . . . in the absence of an explanation regarding such presentation[ ] creates serious doubts regarding the [applicant's] overall credibility.'" *Selami v. Gonzales*, 423 F.3d 621, 625 (6th Cir. 2005) (quoting *In re O-D-*, 21 I. & N. Dec. 1079, 1083 (BIA 1998)). "'[S]uch fraud tarnishes [the applicant's] veracity and diminishes the reliability of his other evidence.'" *Id.*

### a. Summons

Mr. Sterkaj first urges the court to disregard as unreliable the investigation that reported the summons to be fraudulent because Mr. Ceci, the U.S. Embassy's investigator in Albania: (1) "was reporting what was told to him by an employee of the Shkoder District Attorney's office"; (2) did not sign the telegram forwarding his findings to the INS; and (3) graduated from an Albanian police academy that produces corrupt and "untrained" police officers. Mr. Sterkaj, however, fails to back up these allegations with supporting evidence. *See Shllaku v. Gonzales*, 139 Fed. Appx. 700, 702 (6th Cir. 2005) (rejecting petitioner's claim that the Embassy investigator was untruthful where the claim was "unsupported"). We therefore reject his unreliable-investigator argument.

Second, Mr. Sterkaj insists (on appeal but not at the reconvened hearing) that he did not know, and had no reason to know, that the document was fraudulent because his cousin obtained it for him. In *Selami*, the petitioner submitted a fraudulent newspaper article in support of his application. 423 F.3d at 623. On appeal he argued that the IJ erred in relying upon the article because his father sent it to him and he was unaware that it was fraudulent. *Id*. at 626. This court rejected the petitioner's argument, reasoning that the obvious nature of the forgery precluded any finding that the petitioner had no reason to know that the article was fraudulent.

Mr. Sterkaj contends on appeal that he had no reason to know that the summons was fraudulent because his cousin obtained it. But like *Selami*, the IJ here adjourned the hearing for three years in order to investigate the authenticity of Mr. Sterkaj's submission—and during that time Mr. Sterkaj failed to question his cousin about its bona fides. *See id.* That factor bore on the credibility assessment by the IJ in *Selami* and this court sustained that reliance. As in *Selami*, Mr. Sterkaj had this opportunity to verify that the copy of the summons was legitimate. And again mirroring *Selami*, when asked at the reconvened hearing to rebut the charge that the summons was fraudulent, petitioner did not claim that he had been duped. *See id.* He instead claimed the district attorney's office in Shkodra, Albania could not authenticate the summons because many records housed in that office were destroyed in 1997 and 1998. That response did not account for the forged stamp. The INS Forensic Document Laboratory determined that the stamp impression at the bottom of the summons was hand drawn and not produced with a stamp. Thus the district attorney's office was unable to authenticate the summons, not because many of its documents had been destroyed, but because it was a forgery. In light of Mr. Sterkaj's failure to explain the fraud, we conclude that submitting the spurious summons supports the adverse credibility finding. And though the forgery here required microscopic examination to confirm the fraud (the amateurish *Selami* forgery was obvious), we think that factor matters not. An applicant must take reasonable measures to verify the authenticity of any documents accompanying an application. From fraudulent submissions, triers of fact may presume a purpose to defraud in the absence of a persuasive explanation.

### b. "Wanted" Document

Mr. Sterkaj submitted another document in which the Albanian Ministry of Public Order declared his wife a "wanted person" for "[d]enying knowledge of the whereabouts of her husband."

He claims on appeal that "it is not known why the document was filed with the IJ or how it was obtained."

We are unpersuaded. The record evidences that Mr. Sterkaj submitted the document in support of his application, swore that all the documents attached to the application were true to the best of his knowledge, and then neglected to repudiate or otherwise acknowledge that the document was flawed until questioned on cross-examination.

Mr. Sterkaj initially testified that his troubles in Albania began on February 20, 1998. The document, however, dated ten days earlier (February 10, 1998), says that Mrs. Sterkaj has been wanted since September 20, 1997, more than five months *before* Mr. Sterkaj testified that his troubles began. When asked about the discrepancy on cross-examination, Mr. Sterkaj replied, "My wife never had any problem, maybe it's a typing mistake or something like that. Because my wife never had any problem." And on appeal, Mr. Sterkaj contends for the first time that he does not know "why the document was filed with the IJ or how it was obtained." Mr. Sterkaj's implicit suggestion that some other party submitted the document, without more, is unconvincing. Because Mr. Sterkaj cannot reconcile the inconsistency, we concur with the IJ's view that Mr. Sterkaj's argument lacks merit.

In sum, the INA requires us to accord the IJ's credibility determinations a high degree of deference. *Mullai*, 385 F.3d at 638. Viewing the record as a whole, we conclude that substantial evidence supports the IJ's adverse credibility determination. Because nothing in the record compels us to disturb that determination, we affirm.

### B. The Frivolous-Application Finding

The court reviews an IJ's frivolous-application finding for substantial evidence. *See Selami*, 423 F.3d at 626. "[A]n asylum application is frivolous if any of its material elements is deliberately fabricated." 8 C.F.R. § 1208.20. A finding that an alien filed a frivolous asylum application "shall only be made if the immigration judge or the Board is satisfied that the applicant, during the course of the proceedings, has had sufficient opportunity to account for any discrepancies or implausible aspects of the claim." *Id.*

Mr. Sterkaj challenges the IJ's finding that his application was frivolous on three bases. First, he argues that the IJ erred in relying on the Profile of Asylum Claims and Country Conditions for Albania from May 2001 because the persecution he complains about occurred in 1998. Second, he argues that the summons (with its hand drawn stamp) should not be held against him because he was unaware the document was fraudulent. Finally, he argues that the IJ erred in relying upon the "wanted" document, as it was immaterial to his claim for asylum and withholding of removal.

We dispose of the first argument quickly. The IJ relied on Mr. Sterkaj's submission of fraudulent documents, not the country report, to conclude that the application was frivolous. The next—ignorance of the fraud—is the same argument we rejected in upholding the IJ's credibility determination. Third, the "wanted" document is material, rather than irrelevant, as it goes to the heart of Mr. Sterkaj's asylum claim that the Albanian police were targeting him. The document declares his wife "wanted" by the Ministry of Public Order for "'[d]enying knowledge of the whereabouts of her husband' when he was wanted by these forces." Although on appeal he disavows all knowledge of how the document landed in his file, the record establishes that Mr. Sterkaj himself submitted the document to support his asylum application, suggesting that at least *he* thought it material to his claim. Because we conclude that substantial evidence supports the IJ's finding that Mr. Sterkaj filed a frivolous application, we affirm.

C. The BIA's Summary Affirmance Procedure

1. Inaccurate Record

Mr. Sterkaj asserts that the BIA denied him due process by relying upon an "incomplete and inaccurate" transcript to review his case. The transcript of the removal proceedings is indisputably inaccurate, as it contains several pages of testimony from an unrelated immigration proceeding. We note with concern that the government failed to meet its obligation to prepare a reasonably accurate and complete record of the removal hearing upon Mr. Sterkaj's appeal from the IJ's order. *See* 8 U.S.C. § 1229a(b)(4)(C), amended by PL 109-162; 8 C.F.R. § 1003.5; 8 C.F.R. § 1240.9. Due process demands a reasonably accurate and complete transcript to allow for meaningful appellate review and to allow the alien to mount a challenge to the proceedings conducted before the IJ.[2]

This court, however, lacks jurisdiction to consider Mr. Sterkaj's due process claim because he did not first present it to the BIA so that it could have corrected the error. Although an alien's due process challenge generally does not require exhaustion (the BIA lacks authority to review constitutional challenges), the alien must raise correctable procedural errors to the BIA. "[O]nly claims properly presented to the BIA and considered on their merits can be reviewed by this court in an immigration appeal." *Ramani v. Ashcroft*, 378 F.3d 554, 559 (6th Cir. 2004); *accord* 8 U.S.C. § 1252(d)(1) (providing that federal courts cannot exercise jurisdiction over an alien removal appeal where the alien has failed to exhaust all administrative remedies). Because Mr. Sterkaj failed to exhaust administrative remedies for his due process claim, we are precluded from reviewing it.

2. Criteria for Invoking the Summary Affirmance Procedure

Mr. Sterkaj contends that the BIA violated 8 C.F.R. § 1003.1(e)(4) by streamlining his case when the case did not meet a key criterion for summary affirmance—specifically, Mr. Sterkaj reads 8 C.F.R. § 1003.1(e)(4)(i)(A) as requiring that *BIA precedent* squarely control, in this case, the IJ's frivolous-application finding. As in *Denko v. INS*, 351 F.3d 717, 732 (6th Cir. 2003), we "assum[e] without deciding" that we can review the streamlining decision given the absence of substantial factual or legal questions warranting three-member review.

By its plain language, the regulation does not limit summary affirmance to cases where BIA precedent squarely controls the issue. It requires *either* that the issue is squarely controlled by precedent *or* that the factual and legal issues raised on appeal are insufficiently substantial to warrant three-member review. *Denko*, 351 F.3d at 727. As we have determined here, Mr. Sterkaj's challenges as to credibility, frivolousness, and due process are not so substantial as to warrant three-member review. This case satisfies the 8 C.F.R. § 1003.1(e)(4) criteria. Accordingly, we uphold the BIA's exercise of its summary-affirmance procedure here.

III. Conclusion

For these reasons, we deny the petition for review.

---

[2]An error in the record or transcript does not by itself present a due process violation. "To prevail on a due process challenge to deportation proceedings, [an alien] must show error and substantial prejudice." *Gishta v. Gonzales*, 404 F.3d 972, 979 (6th Cir. 2005) (quotation omitted).