**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0778n.06
Filed: November 6, 2007

No. 06-3681

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

ALTIN BAKIU,
        *Petitioner-Appellant,*

|  |  |
|---|---|
| v. | On Petition for Review from the Board of Immigration Appeals |

PETER D. KEISLER,* ACTING ATTORNEY
GENERAL OF THE UNITED STATES OF AMERICA
        *Respondent-Appellee.*

_____

Before: BOGGS, Chief Judge; KENNEDY, Circuit Judge; JORDAN, District Judge**

**KENNEDY, J.** Altin Bakiu is an Albanian national who illegally entered the United States

and thereafter requested asylum and withholding of removal under the Immigration and Nationality

Act. His request for asylum and withholding of removal was denied by the immigration judge, and

the Board of Immigration Appeals affirmed the decision. The immigration judge also found that Mr.

Bakiu had filed a frivolous application for asylum, and the BIA also affirmed this decision. Mr.

Bakiu argues that the decision to deny him asylum and the finding of frivolousness were not

supported by substantial evidence. We disagree, and therefore deny his petition for review.

_____

* Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Acting Attorney General Peter D. Keisler is automatically substitute for former Attorney General Alberto R. Gonzales.

** The Honorable R. Leon Jordan, Senior United States District Judge for the Eastern District of Tennessee, sitting by designation.

1

# BACKGROUND

Altin Bakiu, a citizen of Albania, claimed that he had endured persecution in Albania because of his immediate family's status. Most of Mr. Bakiu's immediate family legally live in the United States. Mr. Bakiu's mother, father, and two of his siblings won the diversity lottery, which entitled them to legally live within the United States. J.A. at 128. They moved to the Detroit, Michigan area in October 2000. Petitioner did not come with them because families winning the diversity lottery are only entitled to bring children under twenty-one, and Mr. Bakiu was twenty-three. J.A. at 96. Mr. Bakiu's brother Fatjon was also left behind in Albania, although it is not clear whether it was because he was too old or because he was wheelchair-bound. J.A. at 125.

At the time his family emigrated to the United States, Mr. Bakiu was legally living and working in Italy. J.A. at 128, 98. He returned to Albania roughly in August 2001 because he lost his job in Italy. J.A. at 128, 98. He then lived with his grandmother and brother in the family home where he grew up. He alleged that upon his return to Albania he was persecuted.[1]

Mr. Bakiu claimed that he has been persecuted because he has family legally living within the United States. *E.g.*, J.A. at 89. He asserted that, even though he was unemployed throughout his time in Albania, individuals believed he had money because his family lived in the United States. He claimed that these individuals extorted him, and if he refused to give them money, they beat him.

---

[1] Mr. Bakiu exhibited confusion regarding this timeline. While Mr. Bakiu alleged that his problems began "six months after [his] family left," J.A. at 89, which would have been May 2001, this is inconsistent with his mother's testimony, which placed him working in Italy until August 2001, J.A. at 128. Mr. Bakiu made other ambiguous statements regarding this timeline. Mr. Bakiu's asylum application stated that he returned to Albania in January 2000, J.A. at 204, and he stated in the removal proceedings that he lived in Italy "until 2000, 2001," J.A. at 98. He also stated in the removal proceedings, however, that he left Albania in February 2003 and had lived in Albania for two years prior to that time, which means he lived in Albania beginning roughly in February 2001.

J.A. at 89-90. Mr. Bakiu was purportedly beaten five times for refusing to pay, and purportedly paid the extortionists more than five times. J.A. at 90-91. The alleged beatings occurred "in remote places, in, let's say in the woods or a forest, remote places and they us[ed] force against [him] in any, in all the ways. Until [he] accepted to give money. . . . [They beat him with] [d]ifferent objects like steel boot, stone." J.A. at 90. He asserted that even though he reported the violence to the police, the police were either ineffectual or refused to help and the beatings continued. J.A. at 94-95, 205, 210. While his parents had initially been sending him around $300 per month, they increased that amount incrementally until it reached $600 per month, allegedly to pay the extortionists. J.A. at 121.

Mr. Bakiu states that he fled Albania to escape persecution, and on March 2, 2003 he illegally entered the United States through Miami International Airport using a fraudulent visa. J.A. at 194. Mr. Bakiu requested asylum, alleging that he was being extorted and abused in Albania because his immediate family was legally living in the United States and it was therefore presumed by his abusers that he was wealthy.

The immigration judge (IJ) denied Mr. Bakiu's petition for asylum and withholding of removal. It found that Mr. Bakiu was not credible because of inconsistencies between his testimony and his application, as well as contradictory evidence from the state department reports and the experience of his family members and others in Albania. Additionally, it found that Mr. Bakiu had not carried his burden of proof. The IJ also found that Mr. Bakiu had filed a frivolous asylum application. Mr. Bakiu asks us to reverse the IJ's determinations. Because we believe that the IJ's decision that Mr. Bakiu was incredible and filed a frivolous application was supported by substantial evidence, we deny his petition for review.

3

**ANALYSIS**

Mr. Bakiu asserts on petition for review that the IJ's denial of asylum was not supported by substantial evidence. He also contends that the IJ's decision that his application for asylum was frivolous is not supported by substantial evidence. We review the BIA's decision, and when the BIA adopts the IJ's decision, we review the IJ's decision directly. *Hasan v. Ashcroft*, 397 F.3d 417, 419 (6th Cir. 2005).

Mr. Bakiu claimed asylum under the Immigration and Nationality Act (INA), 8 U.S.C. § 1158(b)(1) (2006). An alien claiming such relief bears the burden of proving that he is a refugee, which is defined as a person unwilling to return to his native "country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1101(a)(42). The testimony of the applicant can be enough to carry his burden of proof, but it must be credible. 8 C.F.R. § 1208.13(a) (2006). If the applicant's testimony is not credible, then corroborative evidence must be provided. *Id.* A determination that the applicant is incredible and has not carried his burden of proof is reversed when "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B) (2006).

Mr. Bakiu also claimed withholding of removal under the INA, 8 U.S.C. § 1231(b)(3) (2006). An alien claiming such relief bears the burden of proving "that it is more likely than not that he or she would be persecuted on account of race, religion, nationality, membership in a particular social group, or political opinion upon removal to [his or her home] country." 8 C.F.R. § 1208.16(b)(2) (2006).

Mr. Bakiu was also found to have submitted a frivolous application for asylum. J.A. at 69-70. Any alien adjudged to "ha[ve] knowingly made a frivolous application for asylum" is forever

4

ineligible for any sort of immigration to the United States. *Id.* § 1158(d)(6). "[A]n asylum application is frivolous if any of its material elements is deliberately fabricated." 8 C.F.R. § 1208.20 (2006). We conduct substantial evidence review of frivolousness determinations. 8 U.S.C. § 1252(b)(4)(B).

## I. Denial of Asylum

Mr. Bakiu argues that his testimony was credible, and that he carried his burden of proof. We evaluate each argument in turn, and find that neither has merit.

## A. Credibility

Mr. Bakiu asserts that his testimony was credible. Credibility determinations are upheld unless "any reasonable adjudicator would be compelled to conclude to the contrary." 18 U.S.C. § 1252(b)(4)(B). The IJ must, however, give specific reasons for its determination. *Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004). Additionally, the issues and inconsistencies that provide a basis for the determination must "go to the heart of the applicant's claim," and therefore cannot be "minor and irrelevant." *Id.*[2]

The IJ's determination that Mr. Bakiu was incredible is supported by substantial evidence. The main inconsistencies which supported the judgment were regarding the nature of the police department's response to Mr. Bakiu's complaint and the identity of the perpetrators. Mr. Bakiu's vague testimony also significantly supported the IJ's determination.

---

[2] The REAL ID Act of 2005, Pub. L. No. 109-13, div. B, sec. 101, 119 Stat. 231, 303 (codified as amended at 8 U.S.C. § 1158 (2006)), changed the standard governing credibility determinations. Its provisions, however, do not apply in this case, as the effective date was March 1, 2003 and the changes apply only to applications filed on or after the effective date. *Id.*, 119 Stat. at 304.

Mr. Bakiu related inconsistent stories about his interaction with the police department. In his application he alleged that when he went to the police, they "refuse[d] to try and stop [his neighbors] from attacking [him]." J.A. at 205. Indeed, he asserted that the extortionists had the "tacit support of the police." J.A. at 210. In his testimony at the removal proceedings, however, Mr. Bakiu stated that he reported the extortion and beatings to the police, the police stated that they were "going to fix that problem," which he took to mean that the police were "going to help," and that the police never refused to help him. J.A. at 91-95. He further intimated that the reason he believed the police could not protect him was because he was beaten the day after he made the report, and therefore he believed that the police were ineffectual. J.A. at 91, 94. He did not, however, pursue his initial police report nor did he make an additional complaint about the subsequent beating. J.A. at 94.

This is an inconsistency striking at "the heart of the applicant's claim." An applicant has to prove that he or she is "unable or unwilling to avail himself or herself of the protection of" the country from which the applicant has fled. 8 U.S.C. § 1101(a)(42) (2006). It matters greatly, therefore, whether the police truly could not protect Mr. Bakiu, or whether the police were complicit in the alleged persecution. Refusing to help and being complicit in persecution is much different than receiving one report and no further reports or requests for help from the complaining party. Indeed, Mr. Bakiu's testimony is not only inconsistent with his application, it likely supports a finding that Mr. Bakiu has not proven that the police are unable or unwilling to help him with the alleged persecution and therefore has not established his eligibility for asylum.

Mr. Bakiu's testimony at the removal hearing about the identity of his persecutors was also inconsistent with his asylum application. He repeatedly emphasized in his asylum application that

6

his neighbors were extorting and beating him. J.A. at 210 (identifying his neighbors as those who caused him harm); J.A. at 210 ("I believe that my neighbors think that since my family is in America, they must be rich and since I was alone, I was also vulnerable because of the police refusal to protect me from them."); J.A. at 205 ("I am afraid of my neighbors, they have been the culprits."); J.A. at 235 ("He said that people in his neighborhood knew that his parents were living in the United States and they wanted money from him for this reason."). While testifying, however, Mr. Bakiu stated the opposite; Mr. Bakiu insisted that his extortionists were not his neighbors and were instead individuals unknown to him. J.A. at 102 ("They're unknown people from me. . . . I don't know their names, first names, last names."); J.A. at 103 (stating that the attackers were not his neighbors). When given a chance to explain the discrepancy, Mr. Bakiu only stated that it could "maybe" be explained by the fact that he was not asked details in his application and prior interview or that "maybe" he was "a little bit scared" and therefore did not "concentrate[] [o]n all of the questions." J.A. at 115.

This inconsistency similarly strikes at "the heart of the applicant's claim." An applicant has to prove that the persecution was "on account of" one of the protected grounds in the INA. 8 C.F.R. § 1208.13(b)(1) (2006). "[T]he statute[, therefore,] makes motive critical, [so] he must provide *some* evidence of it, direct or circumstantial." *INS v. Elias-Zacarias*, 502 U.S. 478, 483 (1992) (emphasis in original). Mr. Bakiu claimed that he was persecuted because he was presumed wealthy due to his immediate family members legally living within the United States. The identity of his persecutors, therefore, is circumstantial evidence as to whether or not they extorted and beat him because of his membership in this alleged particular social group. The fact that the extortionists were his neighbors would better support his claim; they would at least be aware that Mr. Bakiu's family lived in the

7

United States. When Mr. Bakiu changed his story to his persecutors being unknown to him, his asylum claim was substantially weakened. How did he know that these unknown individuals were extorting him because of the status of his family? He testified that the attackers did know his family was in the United States, J.A. at 101, but he did not specify how he knew that the attackers knew the location of his family, and he did not provide much of an explanation for how the unknown attackers gained such information. J.A. at 101-02 ("They were individuals that knew that my family was in the United States? . . . They sending some other individuals to, that I, unknown individuals that ask me for what they want. . . . I don't know [who they were]. They're unknown people from me. . . . I don't know their names, first name, last names."); J.A. at 103 ("Maybe other people that knew me they, they, these guys took the information from the people that know me and they knew that my parents were in the United States so that's why they're asking me (indiscernible) –" ).

It could be that Mr. Bakiu was using two different definitions of "neighbor." On his application, Mr. Bakiu could have meant that his attackers were his "neighbors" because the individuals were aware that his family lived in the United States and had found out that he went to the police regarding the first attack. "Neighbor" in such a context would mean that it was a person in Mr. Bakiu's general vicinity, not necessarily someone he knew. In his testimony, then, Mr. Bakiu could have resisted the word "neighbor" because the questioners were focusing on whether Mr. Bakiu knew his attackers, which suggests that the questioner believes a "neighbor" to be someone Mr. Bakiu would know. While this is a reasonable explanation of the discrepancy, we are not compelled by the record to conclude that the IJ was incorrect in not so finding; the IJ's decision that Mr. Bakiu was using the word "neighbor" in the same manner, and that therefore his application was inconsistent with his testimony, was supported by substantial evidence.

8

Mr. Bakiu's very vague testimony also greatly supports the IJ's finding that Mr. Bakiu lacked credibility. An applicant must provide " 'credible, direct, and *specific* evidence' " of past persecution or of the basis for the applicant's fear of future persecution. *Klawitter v. INS*, 970 F.2d 149, 153 (6th Cir. 1992) (quoting *Rodriguez-Rivera v. INS*, 848 F.2d 998, 1002 (9th Cir. 1988) (per curiam)) (emphasis added). Mr. Bakiu first testified that the extortionists used "violence" against him. J.A. at 89-90. When asked what sorts of violence, he stated that it was "physical violence." J.A. at 90. When asked to be more specific, he stated: "They are taking me [to] remote places, let's say [to] the woods or a forest, remote places and they us[ed] force against me in any, in all the ways." J.A. at 90. This was followed by him being asked if he was beaten, and Mr. Bakiu answering in the affirmative. When asked what he was beaten with, he said "Different objects like steel boot, stone." J.A. at 90. He was then asked how many times he was beaten, and he replied "Anytime that I [] refus[ed] to give money." When asked to be more specific, he said that he "remember[s] five times" and that he did not refuse to pay the extortionists after the fifth beating. When asked how many times he had paid his persecutors prior to fleeing the country, he stated that he "paid more than five times." J.A. at 90-91.

This sort of testimony is very vague and lacking in detail, and it therefore permits the IJ to draw an inference of incredibility. Despite repeatedly being asked to elaborate, Mr. Bakiu never described basic parts of his story which would be easy to relate if the events had actually occurred. For instance, he never described how many individuals were extorting him, how old the individuals were, whether or not it was the same group of people each time, how he knew that the extortionists were aware his family was in the United States, whether he would give the extortionists all the money his parents sent or just partial sums, or whether he required medical treatment or sustained

9

any sort of injury from being beaten when he refused to pay. There are numerous other details that could have made his story more credible. *Cf. Sylla*, 388 F.3d at 928-29. Based on Mr. Bakiu's testimonial vagueness, his inconsistent statements regarding the identity of his attackers, as well as his inconsistent statements regarding the reaction of the police, the IJ's finding that Mr. Bakiu was incredible was supported by substantial evidence; the record does not compel us to conclude that Mr. Bakiu was credible.

## B. Burden of Proof

Mr. Bakiu next argues that the IJ erred in denying his claim for asylum because he carried his burden of proof. We review the IJ's decision for substantial evidence. 8 U.S.C. § 1252(b)(4)(B) (2006). The IJ's decision here is supported by substantial evidence because Mr. Bakiu's testimony was central to establishing his claim, and the IJ found that testimony incredible.

## C. Withholding of Removal

Mr. Bakiu also petitioned for withholding of removal under the Immigration and Nationality Act (INA), 8 U.S.C. § 1231(b)(3) (2006). Because Mr. Bakiu failed to establish his eligibility for asylum, "it therefore follows that he cannot satisfy the more stringent standard for withholding of [removal]." *See Koliada v. INS*, 259 F.3d 482, 489 (6th Cir. 2001).

## II. Frivolousness of the Application

We review an IJ's determination that an asylum application was frivolous for substantial evidence. *Sterkaj v. Gonzales*, 439 F.3d 273, 278 (6th Cir. 2006). This means upholding the IJ's determination unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B) (2006). "[A]n asylum application is frivolous if any of its material

10

elements is deliberately fabricated." 8 C.F.R. § 1208.20 (2006). It must further be found that the "alien [] knowingly made [the] frivolous application for asylum," 8 U.S.C. § 1158(d)(6) (2006).

While it is a close question, the IJ's determination that Mr. Bakiu's asylum application was frivolous was supported by substantial evidence. The IJ believed that Mr. Bakiu fabricated a story about being extorted because he wanted to join his family in the United States. J.A. at 66. The IJ relied on the State Department's Profile of Asylum Claims, which described how many Albanians fabricate stories of persecution as a means to legally immigrate to join families already living within the United States. J.A. at 191. The IJ also relied on the fact that Mr. Bakiu was inconsistent about crucial details and very vague on other details that went to the heart of his application. Lastly, the IJ believed it likely that Mr. Bakiu deliberately falsified information because Mr. Bakiu failed to apply for asylum in Italy and France, two countries through which he traveled prior to entering the United States. J.A. at 55. While this is not the strongest evidence from which the IJ could infer a "deliberate" and "knowing[]" falsification, we are not compelled by the record to conclude the contrary.

**CONCLUSION**

For the foregoing reasons, the petition for review is DENIED.