NOT RECOMMENDED FOR PUBLICATION
File Name: 09a0470n.06

No. 08-3675

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Jul 08, 2009**
LEONARD GREEN, Clerk

DEJAN KOSTIC,                    )
                                 )
        Petitioner,              )
                                 )
v.                               )   ON APPEAL FROM THE BOARD OF
                                 )   IMMIGRATION APPEALS
ERIC H. HOLDER, JR.,             )
                                 )
        Respondent.              )   OPINION
                                 )

**Before:  GILMAN and McKEAGUE, Circuit Judges; and BARRETT, District Judge.**[*]

**RONALD LEE GILMAN, Circuit Judge.**  Dejan Kostic is a native of the former Yugoslavia and a citizen of Serbia.  He currently resides in Michigan, where he works as an electrician.  Kostic timely filed an asylum application after he arrived in the United States as a nonimmigrant student in 1994.  After an unexplained ten-year delay in processing, Kostic's application was referred to the immigration court, where his claims were adjudicated in a removal proceeding.  The Immigration Judge (IJ) found that Kostic did not testify credibly and therefore did not meet his burden of showing that he is a refugee.  This resulted in the IJ's order removing him to Serbia.  Kostic appealed the IJ's decision to the Board of Immigration Appeals (BIA).  The BIA affirmed, and Kostic now petitions for review of the BIA's order.  For the reasons set forth below, we **DENY** the petition for review.

---

[*] The Honorable Michael R. Barrett, United States District Judge for the Southern District of Ohio, sitting by designation.

## I. BACKGROUND

Kostic filed an application for asylum and withholding of removal within two months of his arrival in the United States. He filed a second asylum application in March 1995, this time attaching a document titled "Certificate" as evidence of his membership in an unnamed political party.

Kostic also attached written statements to both applications. In these statements, he described his membership in the SPO (Serbian Renewal Movement), an opposition party to the Communists in the former Yugoslavia. He also described, among other things, two occasions when the Communist secret police allegedly arrested and beat him because of his democratic beliefs. Those two incidents lie at the heart of Kostic's asylum claim.

Kostic wrote that his "first experience with physical abuse by the . . . Communist secret police was in 1987," when he was a high school student. One day he declared at school that he "thought the time had come to stop the cult of adulation surrounding the Communist dictator, Josip Broz Tito." According to Kostic, "[t]he following day [he] was picked up by the secret police and taken for questioning. [He] spent three days (October 5-8) in jail," where he was "severely beaten . . . with sandbags . . . all over [his] body but mostly on [his] back." Kostic stated that he "ha[s] experienced kidney problems [as a] result" of those beatings, as well as "psychological difficulties, the result of the trauma suffered during those few days."

The second incident that Kostic described occurred approximately four years later, when he was a university student. He wrote that "in 1991, [he] joined the SPO, Serbian Renewal Movement[,]" and he explained that the SPO was the strongest opposition party at that time to Slobodan Milosevic's Communist Party. According to Kostic, he organized a group of science

students at his university to attend a protest in Belgrade that was scheduled for March 9, 1991. He wrote that he "arrived in Belgrade the night before and . . . spent the night in the SPO Headquarters . . ." making final preparations for the protest.

Kostic explained that the protest began as planned, but quickly turned tragic. He said that an "enormous," "fully armed" police force with army tanks arrived and began beating the protestors. When the protesters fought back, many of them were killed by the police. Kostic "was rounded up with a group of protesters" and taken to a jail. His written statement described the events that followed in considerable detail. He wrote that while he waited to be interrogated, passing officers "kick[ed him] or hit [him] with a club" and called him and the other protestors names, including "scum," "traitor," and "criminal." Kostic then described a lengthy and brutal interrogation that culminated with his being "hosed down with fire hoses" and made to stand outdoors overnight in a stiff wind and freezing temperatures. He wrote that he was "released the next day, March 10."

For reasons unexplained in the record, no action was taken on Kostic's application for nearly ten years. In June 2004, the Department of Homeland Security (DHS) finally served Kostic with a Notice to Appear in immigration court. The notice to appear alleged that Kostic had remained in the United States beyond the temporary period for which he had been admitted and charged him with removeability pursuant to 8 U.S.C. § 1227(a)(1)(B).

In November 2004, Kostic suffered a serious injury at work when a dump truck dropped waste water on him. The force of the water caused him to strike his head and neck against a high-voltage cable. Kostic received long-term treatment for his injuries, including prescription medication to treat his ongoing neck and lower-back symptoms.

The IJ reviewed Kostic's applications at a hearing in July 2006. After conceding that he was removable, Kostic pursued his applications for asylum and withholding of removal. Kostic's attorney requested a continuance because of Kostic's medical condition. The IJ denied the request because no evidence other than Kostic's own statements demonstrated that his medication adversely affected his ability to remember or concentrate in any way.

Kostic served as the sole witness in support of his claim. During the brief direct examination by his counsel, Kostic's attorney neglected to ask him about the first incident of alleged physical abuse in 1987. But his attorney did inquire about the second incident in 1991, which Kostic again described. He stated that he had organized a group of university students to travel on behalf of the SPO to "a big demonstration" on March 9, 1991. When asked what happened to him at the demonstration, he said that there was a "huge massive attack" by government officers and that he was arrested and beaten. In addition, Kostic testified that the weather was cold, "around zero degrees centigrade," and that officers threw cold water on him.

The IJ issued an oral decision denying Kostic's application and ordering him removed to Serbia. She found that Kostic had not testified credibly, citing several inconsistencies in his testimony and in his written documentation. The IJ also found that, even if Kostic had been able to establish through credible testimony that he had experienced past persecution, his application must nonetheless be denied due to changed country conditions. Kostic appealed the IJ's decision to the BIA, which affirmed the denial of his application in a two-paragraph written decision. The BIA "f[ou]nd that the Immigration Judge did not clearly err in finding that [Kostic] was not credible in his testimony below given the inconsistencies between his testimony, his two asylum applications,

and his documentary submissions. Thus, [Kostic]'s asylum application was properly denied because of the adverse credibility determination." The BIA went on to state that "the conditions in Yugoslavia have changed dramatically since [Kostic] left because Milosevic is no longer in power." With respect to the denial of Kostic's motion for a continuance, the BIA held that the issue had been abandoned because it was not addressed in Kostic's appellate brief to the agency.

Kostic now petitions this court for review of the BIA's decision. He argues, among other things, that the record compels the conclusion that he was credible and that he has a well-founded fear of future persecution because of his past political activities in Serbia.

## II.  ANALYSIS

### A.  Standard of review

"Because the BIA adopted the IJ's decision with additional commentary, we review the decision of the IJ, as supplemented by the BIA, as the final administrative order." *Ceraj v. Mukasey*, 511 F.3d 583, 588 (6th Cir. 2007). Questions of law involving immigration proceedings are reviewed de novo. *Ali v. Ashcroft*, 366 F.3d 407, 409 (6th Cir. 2004). We will not disturb the IJ's factual findings, or a determination that the petitioner failed to establish eligibility for asylum or withholding of removal, if substantial evidence supports such rulings. *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (holding that a factfinder's rulings will be upheld if "supported by reasonable, substantial, and probative evidence on the record considered as a whole"). Under this standard, we will not reverse a factual determination of the IJ unless we find "that the evidence not only supports

a contrary conclusion, but *compels* it." *Marku v. Ashcroft*, 380 F.3d 982, 986 (6th Cir. 2004) (emphasis in original).

**B.     Legal framework**

Under the Immigration and Nationality Act (INA), 8 U.S.C. § 1158(a), the U.S. Attorney General has the discretion to grant asylum to a "refugee." *Perkovic v. INS*, 33 F.3d 615, 620 (6th Cir. 1994). The disposition of an application for asylum involves a two-step inquiry: (1) whether the applicant qualifies as a "refugee" as defined in 8 U.S.C. § 1101(a)(42)(A), and (2) whether the applicant "merits a favorable exercise of discretion by the Attorney General." *Id.* (citing *INS v. Cardoza-Fonseca,* 480 U.S. 421, 428 n.5 (1987)).

Section 1101(a)(42)(A) of the INA defines a "refugee" as an alien who is unable or unwilling to return to his or her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." An applicant may therefore establish eligibility for asylum by showing that he or she (1) has suffered past persecution, or (2) has a well-founded fear of future persecution. 8 C.F.R. § 208.13(b). The burden is on the applicant to establish that he or she qualifies as a refugee. 8 C.F.R. § 1208.13(a)-(b). If credible, the applicant's testimony "may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. § 1208.13(a).

Once an applicant shows that he or she has suffered from past persecution, the applicant is presumed to have a well-founded fear of future persecution. *Mikhailevitch v. INS*, 146 F.3d 384, 389 (6th Cir. 1998). This presumption can be rebutted by the government "only through establishing by a preponderance of the evidence that since the persecution occurred, conditions in the applicant's

country have changed to such an extent that the applicant no longer has a well-founded fear of being persecuted if he were to return." *Id.* (citation and internal quotation marks omitted).

**C.      The IJ's adverse credibility determination**

Credibility determinations are findings of fact that we review under the "substantial evidence" standard. *Yu v. Ashcroft*, 364 F.3d 700, 703 (6th Cir. 2004). "Credibility encompasses not just consistency but also plausibility and sufficient detail." *Dorosh v. Ashcroft*, 398 F.3d 379, 382 (6th Cir. 2004).  A credibility finding, like other factual findings, will be reversed "only if any reasonable adjudicator would be compelled to conclude to the contrary." *Yu*, 364 F.3d at 703 (quoting 8 U.S.C. § 1252(b)(4)(B)) (internal quotation marks omitted).

The IJ supported her adverse credibility determination by citing various perceived inconsistencies in Kostic's testimony and his written materials.  We find that several of the cited inconsistencies lack support in the record.  For example, the IJ stated in her decision that Kostic "was unable to recall the name" of his political party, the SPO.  In fact, the transcript of the hearing reveals that when Kostic was first asked on direct examination what the SPO "stand[s] for," he reasonably responded by describing its democratic political principles.  His counsel then clarified that she was asking what the *initials* stood for, and Kostic clearly stated: "Serbian Movement."  Although Kostic did not respond with the full translated name of the organization in English (Serbian Renewal Movement), the IJ's statement that Kostic was unable to recall the name of his party is plainly inaccurate.  Neither the IJ nor Kostic's attorney followed up by asking him for the complete name.

Our examination of the record reveals that several of the other inconsistencies cited by the IJ similarly lack support. But because one fatal flaw in Kostic's case precludes the conclusion that the IJ's credibility determination is not supported by substantial evidence, we have no need to discuss each purported inconsistency. *See id.*

The flaw in question relates to the length of Kostic's alleged detention in March 1991. Kostic submitted a document in support of his claim titled "Certificate." The document was written in the Serbo-Croatian language and was accompanied by an English translation. Although the signature on the document is illegible, Kostic testified that it was written by "friends" of his who were members of the SPO party. The document reads, in part:

> Dejan Kostic is a member of our party. As an activist at the University of Novi Sad, School of electrical engineering, he took active part in the demonstrations in Belgrade, on March 1991 [sic]. As a result he was detained. In the course of his stay in pretrial confinement, while interrogated, he was physically and psychologically tortured and he suffered physical injuries. *He was detained from March 11, 1991 to March 24, 1991.*

(Emphasis added.) In contrast, Kostic's written statement in support of his asylum application alleged that he was detained by police on March 9, 1991 and released "the following day." Inconsistent with both of these time frames is Kostic's testimony at his asylum hearing that he was detained "for three days."

Although "a minor inconsistency . . . taken alone 'would be an inadequate basis for an adverse credibility finding[,]" *Ben Hamida v. Gonzales*, 478 F.3d 734, 738 (6th Cir. 2007) (quoting *Yu*, 364 F.3d at 704), the differences here are not minor. Kostic himself was inconsistent as to whether he was detained for three days or only overnight. And the statement that he submitted from

his "friends" states that he was detained and tortured for *thirteen* days—or nearly two weeks. These discrepancies regarding the length of Kostic's detention "go to the heart of" his claim that he was persecuted by the police. *See Chen v. Gonzales*, 447 F.3d 468, 472 (6th Cir. 2006).

When the IJ asked Kostic to explain "why [he] would submit a document which is extremely inconsistent with [his] sworn statements," Kostic offered no explanation. The judge read from the document and pointed out to Kostic that "[i]t says that you were detained for nearly two weeks." Kostic replied that he "d[id]n't quite remember." The IJ then asked whether "[i]t would be fair to say . . . that [the] document [was] not consistent with the claims [he] made" in his asylum application. Kostic responded, "I guess so."

In light of the "high degree of deference" that we must give to the factual determinations of the IJ, the inconsistencies in Kostic's testimony and written submissions leave us with little choice but to uphold the adverse credibility determination. *See Sterkaj v. Gonzales*, 439 F.3d 273, 278 (6th Cir. 2006) (upholding an IJ's adverse credibility determination where an asylum applicant submitted an inconsistent document without explanation). Because Kostic cannot overcome the IJ's finding regarding his lack of credibility, he cannot prove that he is eligible for asylum. This also means that he cannot meet the more stringent standards required to qualify for withholding of removal. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 431-32 (1987) (holding that the asylum standard for past persecution or well-founded fear of future persecution is lower than the "clear probability" standard to show eligibility for withholding of removal).

**D.     Changed country conditions**

The IJ and the BIA further rested their denial of Kostic's application for asylum on the alternative ground that country conditions in Serbia have changed. Evidence submitted by both Kostic and the government shows that, since Kostic left his country, the one-party Communist system headed by Milosevic has been overthrown and multiparty democracy established. According to the IJ and the BIA, these changed conditions demonstrate that Kostic no longer has an objectively reasonable fear of future persecution if he returns to the former Yugoslavia (now Serbia).

The record does not compel a contrary conclusion. In sum, even if we assumed that Kostic was credible and that his detentions in 1987 and 1991 amounted to past persecution, we would still deny his petition because the government has rebutted the presumption of a well-founded fear by showing that country conditions have changed dramatically. *See Mikhailevitch v. INS*, 146 F.3d 384, 389 (6th Cir. 1998)

### III.  CONCLUSION

For all of the reasons set forth above, we **DENY** Kostic's petition for review.