CLAY, Circuit Judge,
concurring.
I join the majority’s opinion to deny Perez-Morales’s petition. In doing so, as observed by the majority, we review questions of law de novo and any factual determinations under a substantial evidence standard. Beyond the discussion of the standard of review and statement of facts set forth by the majority, I write separately regarding certain other legal and factual bases for the denial of the petition.
I. Due Process
Due process “demands a reasonably accurate and complete transcript to allow for meaningful appellate review and to allow the alien to mount a challenge to the proceedings conducted before the IJ.” Shewchun v. Holder, 658 F.3d 557, 569 (6th Cir.2011) (citing Sterkaj v. Gonzales, 439 F.3d 273, 279 (6th Cir.2006)). However, an “error in the record or transcript does not by itself present a due process violation.” Sterkaj, 439 F.3d at 279 n. 2.
The government is obligated to prepare a “reasonably accurate and complete record of the removal hearing.” Sterkaj, 439 F.3d at 279; 8 U.S.C. § 1229a(b)(4). Upon review of the IJ transcript, Perez-Morales is correct to point out the 149 “indiscerna-ble” notations in the transcript; however, Perez-Morales “bears the heavy burden of proving prejudice in order to show a due process violation in an immigration hearing.” Shewchun 658 F.3d at 569 (citing Garza-Moreno v. Gonzales, 489 F.3d 239, 241-42 (6th Cir.2007)). A review of the record shows that Perez-Morales has not met his burden to prove how the incomplete transcript caused actual prejudice that would change the outcome of the case. While the “indiscernable” notations are a distraction, one may reasonably infer the responses provided by Perez-Morales.
Perez-Morales alleges that a complete transcript would support his ineffective assistance of counsel claim. However, upon review of the transcript, this claim appears to be without merit. It is possible to fully comprehend the details of the meeting with the attorney, and there is no evidence to support Perez Morales’s ineffective assistance of counsel claim. Further, it is possible to infer that a meeting took place with an attorney in Detroit but Perez-Morales was unable to recall the name of the attorney; The attorney purportedly told Perez-Morales that he could not file for asylum, but no further explanation was provided. A review of the transcript indicates that Perez-Morales did not describe in detail how his personal experiences in Guatemala support his application for asylum.
*590 II. Withholding of Removal
Perez-Morales also claims that he is eligible for withholding of removal because he experienced persecution on account of his membership in a social group, which he defines as young, Christian males susceptible to recruitment into the Guatemalan gangs. Perez-Morales submits country reports, news articles, and other country specific information published by the State Department about the presence of gangs in Guatemala as well as the problem of police corruption as evidence that he would be persecuted on the basis of his membership in a social group. He argues that these articles demonstrate a well-founded fear of future persecution and that it is unsafe for him to return to his native country. Perez-Morales also references reports that discuss how gangs specifically target and attack Christians.
We review an IJ’s interpretation of country conditions for whether the IJ reached a “reasonable conclusion.” Kouljinski v. Keisler, 505 F.3d 534, 544 (6th Cir.2007). The applicant is required to identify “evidence that compels the opposite conclusion” before we disturb the IJ’s treatment of country condition reports. Id. at 544. In the instant case, the IJ properly considered the country specific information and concluded that the Guatemalan government substantially reduced fears of persecution by controlling the gang problem. The country reports and news articles are unpersuasive as it is unclear how these reports support Perez Morales’s persecution claim. Additionally, the letter submitted by Perez-Morale’s sister merely discusses a fear of future crime but it does not identify specific instances of gang violence upon the family to support his claim for asylum. These reports neither corroborate Perez-Morales’s fear of gang activity nor compel a finding that its more likely than not that Perez-Morales would face persecution if he returned to Guatemala.
III. Convention Against Torture
Under the CAT, removal must be withheld if it is “more likely than not” that [the applicant] would be tortured if removed to the proposed country of removal. 8 C.F.R. § 1208.16(c)(2). In order to succeed on a withholding of removal claim, an applicant “must show a ‘clear probability’ of persecution.” Dugboe v. Holder, 644 F.3d 462, 472 (6th Cir.2011) (citing Liti v. Gonzales, 411 F.3d 631, 640-41 (6th Cir.2005)).
If the BIA adopts the IJ’s decision, as in the present case, denying Perez-Morales’s withholding of removal claims under the INA and the CAT, we review “the IJ’s decision directly to determine whether the decision of the BIA should be upheld on appeal.” Amir v. Gonzales, 467 F.3d 921, 924 (6th Cir.2006). We must uphold the IJ’s denial of withholding under the CAT unless it is “manifestly contrary to the law.” Ali v. Reno, 237 F.3d 591, 596 (6th Cir.2001).
Perez-Morales contends that the IJ erred in its decision to deny his claim for protection under CAT. First, he states that the IJ ignored evidence of government corruption, which he claims directly impacts the country’s ability to reduce gang-related criminal activity. Second, Perez-Morales states that the BIA incorrectly concluded that the government’s involvement to reduce gang activity removes any duty to protect him from harm. Perez-Morales argues that the government’s awareness actually “bolsters [his] claim of acquiescence by the Guatemalan government.” Even if the government has taken preventative measures to reduce gang activity, Perez-Morales still did not meet his burden of showing that the Guatemalan government willfully accepts the gang in *591 volvement in criminal activity. Perez-Morales “must do more than show that the officials are aware of the activity but are powerless to stop it. He must demonstrate that ... officials are willfully accepting of the guerillas’ torturous activities.” Amir, 467 F.3d at 927 (internal citation omitted). In the present case, the government’s commitment to reduce gang violence is not an indication that it acquiesces or is accepting gang violence, but rather is evidence of the government taking action to prevent future criminal activity in the country.