NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0310n.06
Filed: May 4, 2006

No. 04-4310

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JAMILA ISHO TOMA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FROM AN ORDER OF |
| v. | ) | THE BOARD OF IMMIGRATION |
| | ) | APPEALS |
| ALBERTO R. GONZALES, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**Before: GIBBONS and COOK, Circuit Judges; and SCHWARZER, Senior District Judge.**[*]

**JULIA SMITH GIBBONS, Circuit Judge**. Petitioner Jamila Isho Toma, a Chaldean

Christian and Iraqi citizen, appeals from the denial by the Board of Immigration Appeals ("BIA")

of her petition for asylum pursuant to section 208 of the Immigration and Nationality Act ("INA"),

8 U.S.C. § 1158, voluntary withholding of removal pursuant to section 241(b)(3) of the Act, 8

U.S.C. § 1231(b)(3)(A), and withholding of removal pursuant to the United Nations Convention

Against Torture ("CAT"), 8 C.F.R. § 1208.16. The BIA affirmed denial of asylum by an

immigration judge ("IJ"), who held that Toma had been persecuted in the past due to her political

views and religious identity but that she had no valid fear of future persecution because the

---

[*] The Honorable William W Schwarzer, Senior United States District Judge for the
Northern District of California, sitting by designation.

1

overthrow of the Iraqi Ba'athist regime fundamentally altered the conditions in Iraq. For the following reasons, we deny the petition for review.

Toma is a fifty-five year old Iraqi citizen who entered the United States on a tourist visa on March 21, 2001. Toma has suffered abuses due to her affiliation with the Assyrian Democratic Movement and her family's participation in the Kurdistan Democratic Party ("KDP"). Toma alleges that she and other family members[1] were persecuted on several occasions. On March 14, 1977, two policemen and the mayor of her city entered Toma's home, beat Toma's husband, and handcuffed, blindfolded, and dragged Toma into their vehicle. She was transferred to the Iraqi security forces and held with four other prisoners in a small cell. After ten days, she was interrogated and accused of participation in the KDP. While imprisoned, Toma testified that she was raped by one man while being held down by two others, and that she was tortured, beaten, and hanged on a rotating ceiling fan.

On October 3, 1991, Toma and her husband were again arrested and accused of instigating Toma's coworkers and recruiting them into the KDP. Though specifics are lacking, Toma alleges that her treatment was equally poor during this detention, which lasted four months. Toma was arrested most recently on July 17, 1997, after her sister applied for asylum in the United States. Her 1997 detention lasted for three months and again included humiliating treatment. She was ultimately released when her husband paid a bribe to her captors.

In March 2001, Toma was able to procure a false passport and used it to flee to Jordan. From

---

[1] In addition to the allegations about her own detention, Toma testified that her father and brothers were detained in both 1973 and 1976 for association with the Kurdistan Party. When her family members were released in 1976 after a six month detention, they were unable to walk, and were bruised and cut in multiple places. Two of Toma's daughters were also arrested and detained for two weeks, in 1993 and 1995 respectively, for failure to join the Ba'ath Party.

there, she flew to the United States on a tourist visa, leaving her husband and four children behind. Toma's husband was arrested two months later and has not been heard from since.

The Immigration and Nationalization Service ("INS") initiated removal proceedings against Toma. In response, she filed an initial administrative application for asylum on September 20, 2001. After several continuances, the IJ conducted an evidentiary hearing on June 19, 2003, to determine whether to grant the requested relief. After the hearing, the IJ issued an oral decision and order denying asylum, withholding of removal, and protection under the CAT. Toma appealed to the BIA, which affirmed the IJ decision without opinion. Toma now seeks review of the denial of asylum and withholding of removal but concedes that she is not protected by the CAT.

The INA grants this court jurisdiction to review final orders of removal. 8 U.S.C. § 1252(b). As the Board affirmed the IJ's decision without opinion, the IJ decision is considered the final agency determination. *Hasan v. Ashcroft*, 397 F.3d 417, 419 (6th Cir. 2005) (citing 8 C.F.R. § 1003.1(e)(4)(ii)). We review the agency's factual findings for substantial evidence. *Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004). Under this standard, the denial of asylum by the BIA for failure to qualify as a refugee is "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). "It can be reversed only if the evidence presented by [the petitioner] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). Where discretionary, the agency's decision as to whether an applicant is eligible for relief is "conclusive unless manifestly contrary to law." 8 U.S.C. § 1252(b)(4)(C).

Section 208(a) of the INA empowers the Attorney General, in his discretion, to grant asylum to refugees. 8 U.S.C. § 1158(b). "Refugee" is defined by the INA as an alien who is unable or

3

unwilling to return to her home country due to "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1101(a)(42)(A). A "particular social group" is one whose members are bound by a "common, immutable characteristic." *Castellano-Chacon v. I.N.S.*, 341 F.3d 533, 546-57 (6th Cir. 2003). The alien bears the burden of establishing eligibility for asylum either due to past persecution or based on a well-founded fear of future persecution. 8 C.F.R. § 208.13(a). To establish a well-founded fear of persecution, an applicant must establish that:

> (1) he or she has a fear of persecution in his or her country on account of race, religion, nationality, membership in a particular social group, or political opinion; (2) there is a reasonable possibility of suffering such persecution if he or she were to return to that country; and (3) he or she is unable or unwilling to return to that country because of such fear.

*Mikhailevitch v. I.N.S.*, 146 F.3d 384, 389 (6th Cir. 1998). The fear of persecution must be both subjectively genuine and objectively reasonable. *Perkovic v. I.N.S.*, 33 F.3d 615, 620-21 (6th Cir. 1994). Persecution "requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Mikhailevitch*, 146 F.3d at 390.

Once an alien has established past persecution, she enjoys a presumption of a well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1). The burden then shifts to the INS to rebut the presumption by showing that conditions in the applicant's country have changed to such an extent that the applicant no longer has a well-founded fear of being persecuted if she were to return. *Id.* § 208.13(b)(1)(i)(A). "The INS must do more than show that circumstances in the country have fundamentally changed; the INS must also show that such change negates the particular applicant's well-founded fear of persecution." *Ouda v. I.N.S.*, 324 F.3d 445, 452 (6th Cir. 2003).

4

If the presumption is successfully rebutted, the applicant may still be eligible for asylum based purely on past persecution by demonstrating "compelling reasons for being unwilling or unable to return to the country arising out of the severity of the past persecution." 8 C.F.R. § 208.13(b)(1)(iii)(A). "[A] person who – or whose family – has suffered under atrocious forms of persecution should not be expected to repatriate. Even though there may have been a change of regime in his country, this may not always produce a complete change in the attitude of the population, nor, in view of his past experiences, in the mind of the refugee." *Matter of Chen*, 20 I. & N. Dec. 16, 19 (B.I.A. 1989) (internal quotation and citation omitted); *see also Neli v. Ashcroft*, 85 F. App'x 433, 437 (6th Cir. 2003) (adopting *Chen*'s language and reasoning).

In order for an alien to be entitled to a withholding of removal, she must show that there is a clear probability that if she returns to her home country she will be persecuted on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 C.F.R. § 208.16(b). The burden of proof for withholding of removal is more exacting than that for asylum. *Mikhailevitch*, 146 F.3d at 391. Thus, an alien who does not qualify for asylum cannot meet the higher standard for withholding of removal. *Id.*; *Yu*, 364 F.3d at 703 n.3.

In this case, the IJ rejected Toma's asylum and withholding claims even though she established past persecution via her arrests, rape, and torture, thereby establishing a presumption of future persecution. Relying on the overthrow of the Iraqi regime and Toma's admission that she no longer fears the government, but rather fears persecution by fundamentalist insurgents, the court held that the government successfully rebutted the presumption by showing that the conditions in Iraq had changed so as to negate Toma's fear of future persecution. Next, the IJ held – while not discussing the evidence with any particularity – that Toma could not show an independent, well-

5

founded fear of future persecution either as an individual or due to her membership in a particular social group. Finally, while acknowledging the closeness of this case, the IJ denied Toma a discretionary grant of asylum based on the severity of her past persecution because she lived in Iraq and worked from her home between 1997 and 2001 without apparent difficulty.[2]

Toma argues that the government failed to rebut the presumption of future persecution. Her argument cannot succeed. Substantial evidence supports the IJ's determination that the changed conditions in Iraq successfully rebutted Toma's presumption of future persecution. As this court stated in *Khora v. Gonzalez*, which also denied asylum to a Chaldean Christian, "Given that Khora's past persecution was at the hands of the security forces of the Hussein government, the immigration judge's conclusion that the change of power negated Khora's presumed fear based on past persecution was not unreasonable." 2006 WL 305682, at *3 (6th Cir. Feb. 10, 2006). Here, Toma also suffered persecution solely at the hands of Ba'ath party officials for political reasons; these officials have been overthrown, and Toma admits that she no longer fears persecution by the government. Given these factors, and the government's evidence showing that the new Iraqi regime will recognize the country's multi-religious society, the IJ's holding that the government successfully rebutted the presumption was supported by substantial evidence.

Having found changed conditions, the IJ moved to the next step in the analysis by determining whether Toma could show a well-founded fear of future persecution, either as part of

_____

[2] Toma does not challenge the IJ's holding denying the *Chen* humanitarian exception and has therefore waived this argument. *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004). We note, however, that the evidence relied upon by the IJ for the denial of the discretionary grant of asylum bears little relation to the reasons for the humanitarian exception as noted in *Matter of Chen* – that is, the fact that Toma remained in Iraq for some time after the persecution is unrelated to the severity of that persecution.

6

a "particular social group" or for herself specifically. The IJ found that Toma failed to show an individualized, well-founded fear of future persecution. This finding is supported by substantial evidence because the Ba'athists are no longer in power and therefore no longer pose a threat to her. Toma has introduced no evidence showing that she would be specifically targeted for future persecution by actors other than the Ba'athists. While Iraq is undoubtedly violent, the threat of violence that Toma will face upon her return does not constitute persecution. The IJ's decision as to Toma's fear of future persecution was therefore based on substantial evidence.

The IJ also found that Toma was not a member of a particular social group, but provided no reasoning to support its conclusion. Toma argues that this determination was incorrect because her family constitutes a group subject to persecution. This court has previously noted that "kinship ties" are an immutable characteristic falling within the definition of "particular social group." *Castellano-Chacon*, 341 F.3d at 547 (quoting *Matter of Acosta*, 19 I. & N. Dec. 211, 233-34 (B.I.A. 1985)). Toma has shown that she belongs to a "known family in the minority ethnic group of the Assyrian Party" that has suffered persecution; her husband, her children, and she have all been detained and tortured, at least in part because of their immutable kinship ties to family members who were politically active in the Iraqi resistance. As a result, the IJ wrongly concluded that Toma's family did not constitute a "particular social group."

Toma, however, has presented no evidence showing that her family faces a well-founded threat of future persecution different from her own. Toma's husband was arrested after she fled Iraq and remains missing, but his arrest was at the hands of the Ba'athist regime. The fact that he has not since reappeared cannot, without some evidentiary support, be construed as evidence of persecution by the *new* Iraqi regime. In addition, the remnants of her family have by all accounts

7

lived in peace since the invasion. Toma has thus provided no objective evidence of persecution of her family since the overthrow[3] and has not shown that her family is subject to a fear of persecution that differs from her personal fear. As a result, Toma's fear of future persecution is not well-founded regardless of whether it is individual or as part of her family group, and the IJ properly denied Toma's petition for asylum and withholding of removal.

The petition for review is denied.

---

[3] The only record evidence of persecution during this time period is a single newspaper article describing threats to Chaldean Christians by Iraqi Muslims. Toma does not assert that she is eligible for asylum based on her race, so this evidence is not probative for this inquiry.