KAREN NELSON MOORE, Circuit Judge,
concurring in part and dissenting in part.
Because the BIA did not properly review the full record, Aleksander Spaqi has established a due-process violation arising out of the BIA’s treatment of his untimely asylum application. On the merits, the BIA erred as a matter of law when it concluded that Aleksander could not show persecution on account of a protected ground as a result of the harm he experienced as a member of the Spaqi family. I therefore would grant Aleksander’s petition for review of the BIA’s decision in Case No. 09-4442 denying Aleksander’s requests for asylum and withholding of removal. Because Aleksander waived challenge to the BIA’s denial of his CAT claims, I would, however, deny review of the portion of Aleksander’s petition requesting protection under the CAT. I agree with the majority’s disposition of Case No. 09-4444.
In Case No. 09-4442, I would remand to the BIA with instructions to consider the one-year finding in light of the full record, and to address in the first instance whether Aleksander has demonstrated past persecution or a well-founded fear of future persecution by persons whom the government of Kosovo is unable or unwilling to control. Because the BIA’s analysis of Aleksander’s withholding of removal claim turned on its analysis of his asylum claim, the BIA should also determine whether Aleksander meets the withholding-of-removal standard.
The BIA agreed with the IJ’s determination that Aleksander was ineligible for asylum based upon his failure to file within *557 the one-year period, and his failure to establish any changed or extraordinary circumstances related to this delay. Alek-sander concedes that, in general, asylum applicants must file their applications for asylum within one year after their arrival in the United States. See 8 U.S.C. § 1158(a)(2)(B). He argues, however, that he qualifies for an exception for a late-filed application because he has demonstrated “the existence of ... extraordinary circumstances relating to the delay in filing an application within the period specified.” Id. at § 1158(a)(2)(D).
Pursuant to 8 U.S.C. § 1252(a)(2)(A) and (B), when an asylum application is denied as untimely, this court has jurisdiction to review only “constitutional claims or questions of law,” 8 U.S.C. § 1252(a)(2)(D), and not “discretionary or factual questions,” arising out of that determination, Almuhtaseb v. Gonzales, 453 F.3d 743, 748 (6th Cir.2006). Aleksander claims that he was denied procedural due process because, when reviewing the IJ’s one-year finding, the BIA considered an incomplete Administrative Record. Because this is a constitutional claim, he contends that we may assert jurisdiction.
As an alien, Aleksander is “entitled to the due process of law in deportation proceedings,” Al-Ghorbani v. Holder, 585 F.3d 980, 992 (6th Cir.2009), which “requires that an alien be afforded a full and fair hearing,” Gilaj v. Gonzales, 408 F.3d 275, 290 (6th Cir.2005). “Due process [also] demands a reasonably accurate and complete transcript to allow for meaningful appellate review and to allow the alien to mount a challenge to the proceedings conducted before the IJ.” Sterkaj v. Gonzales, 439 F.3d 273, 279 (6th Cir.2006). “To prevail on a due process claim, [Alek-sander] must demonstrate that a constitutional error caused actual prejudice; i.e., that the error materially affected the outcome of [his] case.” Al-Ghorbani, 585 F.3d at 992.
I believe that Aleksander has established a violation of his procedural due-process rights. First, and most importantly for the due-process analysis, it appears that the BIA did not review “a reasonably accurate and complete transcript [that would have] allow[ed] for meaningful appellate review and [for Aleksander] to mount a challenge to the proceedings conducted before the IJ.” Sterkaj, 439 F.3d at 279. The IJ found that Aleksander did not provide documentation “to corroborate his inclusion on his father’s application, or that his father’s application was filed within one year of entry to the United States.” Administrative Record (“A.R.”), 09-4442, at 90 (IJ Decision at 11). The BIA agreed with the IJ that Aleksander “turned 21-years-old shortly after entry, and failed to produce documentation to meet his burden of demonstrating extraordinary circumstances.” Id. at 2 (BIA Decision at 1).
To the contrary, the record before the BIA should have included a transcript of the first hearing in Aleksander’s case which would have corroborated Aleksan-der’s claim that he had been included in his father’s application. Aleksander described this hearing in detail in his appeal to the BIA and noted the particular case number of the asylum application in which he was originally included as a derivative beneficiary. In addition, Aleksander provided to the BIA a copy of his father’s I-589, which listed Aleksander as a derivative beneficiary. At the hearing, held before the one-year period expired, the IJ separated out Aleksander’s case because he could no longer be included on his father’s application. The IJ then deliberately scheduled a hearing to occur before Aleksander’s twenty-second birthday, and suggested that he would thereby remain eligible for filing a separate application for *558 asylum.[1] The Administrative Record in Aleksander’s case, however, did not include the key transcript.
Instead of considering the referenced materials, the BIA relied on the IJ’s findings, which mischaracterized the proceedings below. Inexplicably, the same IJ who concluded that Aleksander did not demonstrate that he was included in his father’s timely application had herself separated out Aleksander’s case and had adjudicated his father’s timely application. Furthermore, the BIA’s assertion that Aleksan-der’s application was four years late is belied by the record. The IJ found that Aleksander entered the United States on September 4, 2004, and filed his asylum application on October 5, 2005, which is a little over thirteen months after entry. Despite this finding, the IJ erroneously asserted in its decision that Aleksander filed his application almost four years after his arrival. The BIA simply repeated this error.[2]
The BIA’s treatment of the one-year issue suggests that the BIA either did not independently review the record, or at most, reviewed an incomplete one. As a result, Aleksander was deprived of his right to have the evidence presented “fairly considered.” Ahmed v. Gonzales, 398 F.3d 722, 725 (6th Cir.2005). We have stated that “[w]hat is required is merely that [the BIA] consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted.” Scorteanu v. INS, 339 F.3d 407, 412 (6th Cir.2003) (internal quotation marks omitted); see Abdulai v. Ashcroft, 239 F.3d 542, 549-50 (3d Cir.2001) (suggesting that “the BIA denies due process to an alien when it acts as a mere rubber-stamp”) (internal quotation marks omitted). I do not believe the BIA’s opinion in this case meets that threshold.
The government counters that Aleksan-der did not exhaust his due-process challenge before the BIA. “Although an alien’s due process challenge generally does not require exhaustion (the BIA lacks authority to review constitutional ehal- *559 lenges), the alien must raise correctable procedural errors to the BIA.” Sterkaj, 439 F.3d at 279. “[O]nly claims properly presented to the BIA and considered on their merits can be reviewed by this court in an immigration appeal.” Ramani v. Ashcroft, 378 F.3d 554, 560 (6th Cir.2004); 8 U.S.C. § 1252(d)(1) (providing that federal courts cannot exercise jurisdiction over an appeal from an order of removal if the alien has failed to exhaust all administrative remedies). Aleksander asserted in his brief to the BIA that his separate application should be treated as timely because he was included as a derivative on his father’s timely application.[3] Aleksan-der then described in detail the hearing in which the IJ instructed Aleksander to file a separate petition, and explained that his father’s asylum application, which he submitted with his appeal, clearly listed him as a derivative beneficiary. I conclude, therefore, that Aleksander “rais[e]d correctable procedural errors to the BIA” and exhausted those claims relevant to his due process challenge. Sterkaj, 439 F.3d at 279.
“To constitute fundamental unfairness ..., a defect in the removal proceedings must have been such as might have led to denial of justice.” Allabani v. Gonzales, 402 F.3d 668, 676 (6th Cir.2005) (internal quotation marks omitted). “To prevail on a due process claim,” therefore, Aleksan-der bears the burden of demonstrating “actual prejudice, and that the alleged prejudice materially affected the outcome of his ... case.” Mapouya v. Gonzales, 487 F.3d 396, 416 (6th Cir.2007); see Vasha v. Gonzales, 410 F.3d 863, 875 (6th Cir.2005) (stating that “a constitutional violation results in prejudice if it potentially [affected] the outcome of the proceedings.” (internal quotation marks omitted) (alteration in original)).
First, had his claim been reviewed properly, Aleksander’s untimely filing may have been excused on grounds of changed or extraordinary circumstances. The IJ and BIA have discretion to consider an untimely application if the alien demonstrates “the existence of changed ... or extraordinary circumstances.” 8 U.S.C. § 1158(a)(2)(D).[4] Among the non-exhaustive list of “extraordinary circumstances” provided by the governing regulations is the exception that arises when:
[t]he applicant filed an asylum application prior to the expiration of the 1-year deadline, but that application was rejected by the Service as not properly filed, was returned to the applicant for corrections, and was refiled within a reasonable period thereafter.
8 C.F.R. § 1208.4(a)(5)(v). Aleksander appeared before the IJ, was included on an asylum application filed before the one-year period expired, and filed his own separate application a month later, at a hearing scheduled by the IJ herself. Thus, Aleksander was included on an application *560 filed before the conclusion of the one-year period, and his derivative “application ... was rejected ... as not properly filed.” Id. (emphasis added). In addition, this exception requires that the application “was refiled within a reasonable period” after the first application was rejected. Id. It surely appears more reasonable that Aleksander filed his application one year and one month rather than four years after his arrival, and roughly six weeks after his derivative application was rejected.
By showing that the Administrative Record lacked a key hearing transcript which contributed to inadequate review of his claims, Aleksander has established “actual prejudice” that “materially affected” his eligibility for asylum. Mapouya, 487 F.3d at 416. The BIA, however, alternatively denied his asylum claim on the merits. Whether the violation “materially affected the outcome of his ... case,” id. (emphasis added), therefore, turns on our review of the BIA’s alternative findings. If the outcome of his case would have been different but for the one-year finding, then Aleksan-der has established prejudice, and the BIA must reconsider its determination in light of the complete record.
Aleksander appeals the BIA’s alternative denial of his asylum claim on the merits, as well as the BIA’s denial of his claims for withholding of removal and protection under the CAT. To qualify for asylum, Aleksander must show that he is a “refugee” within the meaning of the INA § 101(a)(42), 8 U.S.C. § 1101(a)(42); see 8 C.F.R. § 1208.18(a). To establish that he is a refugee, Aleksander must demonstrate that he has suffered past persecution or has a well-founded fear of future persecution “on account of race, religion, nationality, membership in a particular social group, or political opinion.” 8 U.S.C. § 1101(a)(42); see id. at § 1158(b)(l)(B)(i); Berri v. Gonzales, 468 F.3d 390, 396 (6th Cir.2006).
Aleksander claimed to have suffered persecution on account of his membership in particular social group: the Spaqi family. The BIA determined that Aleksan-der’s membership in his own family did not constitute membership in a particular social group and that conflict between the families did not give rise to harm on account of a protected ground. The BIA did not find that Aleksander failed to show the requisite severity of harm. Rather, the BIA’s analysis was limited to nexus — that Aleksander had not shown that any harm to him was on account of a ground specifically protected by the INA (race, religion, nationality, membership in a particular social group, or political opinion).
The BIA erred as a matter of law when it determined that “Spaqi family members embroiled in a blood feud,” A.R., 09-4442, at 3 (BIA Decision at 2) — which the IJ characterized as Aleksander’s immediate family and close relatives — do not constitute a particular social group. Both Alek-sander and Prek identified the particular social group suffering persecution as consisting of Prek Spaqi, his children, and his close relatives. In Castellano-Chacon v. INS, 341 F.3d 533 (6th Cir.2003), this court adopted the BIA’s definition of a “particular social group” as composed of individuals who share a “common, immutable characteristic.” Id. at 546-47. “[A] common, immutable ... characteristic” includes those qualities that members “either cannot change, or should not be required to change,” such as “sex, color, or kinship ties.” Bi Xia Qu v. Holder, 618 F.3d 602, 606 (6th Cir.2010) (quoting Matter of Acosta, 19 I. & N. Dec. 211, 233 (BIA 1985)) (emphasis added).
Because family identity may be common, distinctive, and immutable, we observed that a particular social group defined by *561 “membership in the same family[ ] is widely recognized” in this circuit and others as falling within the INA’s protection. Al-Ghorbani, 585 F.3d at 995; see, e.g., Torres v. Mukasey, 551 F.3d 616, 629 (7th Cir.2008) (“Our prior opinions make it clear that we consider family to be a cognizable social group within the meaning of the immigration law.”); Jie Lin v. Ashcroft, 377 F.3d 1014, 1029 (9th Cir.2004) (“Where family membership is a sufficiently strong and discernible bond that it becomes the foreseeable basis for personal persecution, the family qualifies as a ‘social group.’”); Gebremichael v. INS, 10 F.3d 28, 36 (1st Cir.1993) (“There can, in fact, be no plainer example of a social group based on common, identifiable and immutable characteristics than that of the nuclear family.”). Accordingly, under our circuit precedent, a “known family” bound by immutable kinship ties — which is thus particular and socially visible[5] — constitutes a particular social group. Toma v. Gonzales, 179 Fed.Appx. 320, 324 (6th Cir.2006) (internal quotation marks omitted). In accordance with widespread precedent, Aleksander has thus demonstrated membership in a particular social group by virtue of membership in his family.
There is no suggestion, furthermore, that Romoja family members bear a grudge particular to Aleksander — instead, they want to harm him because of his membership in the Spaqi family, which provides the nexus required by statute. Compare Torres, 551 F.3d at 630 (vacating BIA’s order denying relief because applicant’s “testimony is rife with examples that provide his family’s history” — namely, the targeting of his older brothers — as the cause of his persecution), with Demiraj v. Holder, 631 F.3d 194, 199 (5th Cir.2011) (concluding that “[t]he record here discloses a quintessentially personal motivation” for vengeance, and not one based on family membership). Thus, the BIA erred when it concluded that conflict between the families did not constitute harm on account of a protected ground.
Because the stated basis for denying asylum relief on the merits was improper, Aleksander has shown that the due-process violation may have “materially affected the outcome of his ... case.” Mapouya, 487 F.3d at 416. Consequently, on remand, the BIA should review the IJ’s one-year finding in light of the full record. See Ahmed, 398 F.3d at 728 (“The proper remedy for this due process violation is to give [petitioners] an opportunity to have their case heard fairly.”).
To prevail ultimately on his asylum claim, Aleksander must show past harm or well-founded fear of future harm that rises to the level of “persecution,” and that the persecution is “by the government or persons [the] government is unwilling or unable to control.” Kante v. Holder, 634 F.3d 321, 325 (6th Cir.2011) (internal quotation marks omitted); see Gilaj, 408 F.3d *562 at 283-85. The BIA did not specifically address whether the severity of the alleged harm rose to the level of persecution or whether the government of Kosovo is unable or unwilling to protect him from the harm. “When the BIA does not fully consider an issue,” as a “reviewing court” we are “ ‘not generally empowered to conduct a de novo inquiry into the matter being reviewed.’ ” Bi Xia Qu, 618 F.3d at 609 (quoting Gonzales v. Thomas, 547 U.S. 183, 186, 126 S.Ct. 1613, 164 L.Ed.2d 358 (2006)). Because the BIA did not fully consider whether Aleksander is eligible for asylum, we must “remand to the [BIA] for additional investigation or explanation.” Thomas, 547 U.S. at 186, 126 S.Ct. 1613 (internal quotation marks omitted). Accordingly, I would remand to the BIA for consideration of whether Aleksander has established past persecution or well-founded fear of future persecution from which the government of Kosovo is unable or unwilling to protect him. In addition, the BIA’s dismissal of Aleksander’s withholding of removal claim was based on its analysis of his asylum claim. Therefore, the BIA must also consider on remand whether Aleksander has established “that there is a clear probability that he will be subject to persecution if forced to return to” Kosovo, such that he is entitled to withholding of removal. Pilica v. Ashcroft, 388 F.3d 941, 951 (6th Cir.2004).
Because the BIA did not properly review the full record, Aleksander has established a due-process violation arising out of the BIA’s treatment of his untimely asylum application. On the merits, the BIA erred as a matter of law when it concluded that Aleksander could not show persecution on account of a protected ground as a result of the harm he experienced as a member of the Spaqi family. I therefore would grant Aleksander’s petition for review of the BIA’s decision in Case No. 09-4442 denying Aleksander’s requests for asylum and withholding of removal. I would remand to the BIA with instructions to consider the one-year finding in light of the full record, and to address in the first instance whether Aleksander has demonstrated past persecution or a well-founded fear of future persecution by persons whom the government of Kosovo is unable or unwilling to control. Because the BIA’s analysis of Aleksander’s withholding of removal claim turned on its analysis of his asylum claim, the BIA in my view must also determine whether Aleksander meets the withholding-of-removal standard.
For the reasons explained above, I respectfully dissent in Case No. 09-4442.

. An excerpt of that hearing follows:
[Judge for the Record:] Let the record reflect that the Respondent is present and this case was part of the father’s file, file A 98 490 634, and that ... Grace, will you make a copy of that and put it in his file as well.... [T]his matter will be separated out at this point because the Respondent is now 21 years of age.
[Judge:] Is there a separate Application for him?
[Aleksander's Attorney ("Attorney”):] No, Your Honor. I miscalculated the age and I did not prepare a separate Application.
[Judge:] I assume you're going to consolidate this with the father?
[Attorney:] Yes, Your Honor.
[setting a hearing date for October 21]
[Judge:] And unfortunately he won't be eligible for Asylum but only eligible for — well, yes he will be because he's, be 21.
[Attorney:] ... I can submit the Application prior to the one year anniversary, Your Honor....
[Judge:] Right, because of his 21st birthday.
[Attorney:] Right.
[Judge:] ... October 12, 2005, at 11:00.
[Department of Homeland Security ("DHS”):] That still passes his 21st, his 22nd birthday.
[Attorney:] I will submit, I will ...
[Judge:] When’s his 22nd birthday?
[DHS:] He was born October 10, '83, so he turned 21 October 10, of '84, '04, I’m sorry.
[Judge:] Well, let's make it October 5, then.
Supp. App’x at 2-4.

. The erroneous four-year finding is crucial because the BIA and IJ provided very little analysis of Aleksander’s argument that he qualified for an exception to the one-year period, and such a discretionary exception hinges on the reasonableness of the time taken by the applicant to file the petition.

. Aleksander incorrectly asserted to the BIA that he had been included on his father's application when he was still a minor. It appears that his father's application was filed after Aleksander had attained age 21. The core of his argument to the BIA, however, was that it was reasonable for him to have relied on the derivative application under the circumstances.

. “Changed circumstances” may include "[i]n the case of an alien who had previously been included as a dependent in another alien’s pending asylum application, the loss of the spousal or parent-child relationship to the principal applicant through ... attainment of age 21.” 8 C.F.R. § 1208.4(a)(4)(i)(C). Alek-sander had turned 21 before his father’s application was filed, but the examples provided by statute are not exhaustive. Aleksander’s argument may be analogous to this ground for an exception to the one-year period.

. According to the BIA, the "key characteristics of a particular social group are particularity and social visibility.” Al-Ghorbani, 585 F.3d at 994 (citing Matter of S-E-G-, 24 I. & N. Dec. 579, 582 (BIA 2008)). When holding that the family may satisfy the particularity and social-visibility requirements, we explained that:
The essence of the particularity requirement ... is whether the proposed group can accurately be described in a manner sufficiently distinct that the group would be recognized, in the society in question, as a discrete class of persons. Social visibility, on the other hand, requires that the shared characteristic of the group should generally be recognizable by others in the community. The shared characteristic must be considered in the context of the country of concern and the persecution feared. Id. (internal citations and quotation marks omitted). There is no suggestion that the Spaqi family is not distinct and recognizable in their community.