NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0138n.06

Case No. 20-3601

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Mar 16, 2021
DEBORAH S. HUNT, Clerk

ANGELES ALICIA FERNANDEZ-GALVAN,

　　　　Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

　　　　Respondent.

)
)
)
)
)
)
)
)
)
)
)

ON PETITION FOR REVIEW
FROM THE UNITED STATES
BOARD OF IMMIGRATION
APPEALS


**O P I N I O N**

BEFORE: McKEAGUE, GRIFFIN, and NALBANDIAN, Circuit Judges.

**McKEAGUE, Circuit Judge.** Angeles Alicia Fernandez-Galvan, a 23-year-old native of Honduras, requests review of a Board of Immigration Appeals (BIA) decision denying her application for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). She seeks asylum and withholding of removal based on a fear of persecution on account of her membership in the proposed social group of "Honduran children unable to extricate themselves from their fathers." Because the BIA's decision that the proposed social group lacks particularity is supported by substantial evidence in the record, we **DENY** her petition for review.

**I**

Fernandez-Galvan was born in Honduras in 1998. In November 2016, she and her younger brother fled Honduras because they feared abuse from their violent father. They entered the United States without inspection on December 8, 2016. On June 9, 2017, Fernandez-Galvan applied for

asylum, withholding of removal, and protection under the CAT based on her membership in the proposed social group of "Honduran children unable to extricate themselves from their fathers."

The immigration judge held a hearing regarding her application in January 2018. Fernandez-Galvan testified that while growing up in Honduras her father would drink heavily and yell at her, her siblings, and her mother. When Fernandez-Galvan's mother left Honduras in 2014, her father became physically violent. In July 2015, her father struck her with a motorcycle helmet. Fernandez-Galvan did not report this incident to the police because the police "in Honduras [are] kind of corrupt, and they really don't help in those kind[s] of cases," and because her father knew attorneys and "people with important jobs in the country" who would have been able to help him.

Later, in August 2016, Fernandez-Galvan's father tried to hit her, but her older brother intervened and protected her. Later that night, someone sprayed pepper spray on her older brother's face. Fernandez-Galvan does not know who did this, but she believes it was her father.

In November 2016, Fernandez-Galvan's father removed her belongings from the home. Fernandez-Galvan and her younger brother had nowhere to live, so they decided to leave Honduras and seek protection in the United States. She testified that she could not live with her grandmother in Honduras because her father had threatened to burn her grandmother's house down.

The immigration judge denied Fernandez-Galvan's application for asylum and withholding of removal. He found that her proposed social group was not sufficiently particularized because "[t]he fact that children are subject to control from their parents is a reality of childhood in virtually a universal fashion;" that the group was amorphous because "people age out of being a child and become an adult;" and that the group lacked definable boundaries. The immigration judge also denied her application for protection under the CAT, finding that there was no evidence

establishing that her father "acts in any 'official capacity' in Honduras," nor that the Honduran government "approves of or willfully tolerates its government officials engaging in torture."

The BIA affirmed in a written decision and held that Fernandez-Galvan's proposed social group was "impermissibly defined by the harm that she experienced in the past" and that it lacked immutability and social distinction. This petition follows.

## II

This Court has jurisdiction to review final orders of removal issued by the BIA. *Umana-Ramos v. Holder*, 724 F.3d 667, 670 (6th Cir. 2013). Here, the BIA issued a separate opinion affirming the immigration judge's decision, so we review the BIA decision as the final agency determination. *Hachem v. Holder*, 656 F.3d 430, 437 (6th Cir. 2011). We review questions of law de novo but give "substantial deference" to the BIA's interpretation of the Immigration and Nationality Act and any accompanying regulations. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). Factual findings are reviewed under the substantial-evidence standard. *Id.*

### A. Asylum

The Immigration and Nationality Act (the Act) allows the Attorney General to grant asylum to a "refugee." 8 U.S.C. § 1158(b)(1)(A). The Act defines a "refugee" as "any person who . . . is unable or unwilling to return to . . . [his or her] country because of persecution or a well-founded fear [thereof] on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). Fernandez-Galvan bears the burden of proof in establishing that she meets the definition of a refugee. *Bonilla-Morales v. Holder*, 607 F.3d 1132, 1136 (6th Cir. 2010).

Fernandez-Galvan seeks asylum based on her membership in the particular social group of "Honduran children unable to extricate themselves from their fathers." A "particular social group"

3

is defined as a group "composed of individuals who share a 'common, immutable characteristic.'" *Umana-Ramos*, 724 F.3d at 671 (quoting *Urbina-Mejia v. Holder*, 597 F.3d 360, 365 (6th Cir. 2010)). The shared characteristic "must be one that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." *Juan Antonio v. Barr*, 959 F.3d 778, 790 (6th Cir. 2020) (quoting *Bi Xia Qu v. Holder*, 618 F.3d 602, 606 (6th Cir. 2010)).

Further, a cognizable social group must be both socially visible and particular. *Bonilla-Morales*, 607 F.3d at 1137. Social visibility means that "the shared characteristic of the group should generally be recognizable by others in the community." *Id.* (quoting *Al-Ghorbani v. Holder*, 585 F.3d 980, 994 (6th Cir. 2009)). Particularity requires that the group "can accurately be described in a manner sufficiently distinct that the group would be recognized, in the society in question, as a discrete class of persons." *Id.* (quoting *Al-Ghorbani*, 585 F.3d at 994).

Fernandez-Galvan's social group is too diffuse to satisfy the particularity requirement under the Act. This Court has consistently rejected "generalized, sweeping [social group] classifications for purposes of asylum." *Kalaj v. Holder*, 319 F. App'x 374, 376 (6th Cir. 2009) (alteration in original) (quoting *Rreshpja v. Gonzales*, 420 F.3d 551, 555 (6th Cir. 2005)). And we recently held that a similar proposed group of "children who are unable to leave their families" was overbroad and lacked particularity because being subject to a parent's authority and unable to leave is "a near-universal reality of childhood." *Orellana v. Sessions*, 722 F. App'x 443, 449 (6th Cir. 2018).

Fernandez-Galvan's proposed group—"Honduran children unable to extricate themselves from their fathers"—fails for the same reasons. The group could include almost every Honduran child, and while particular social groups may include large swaths of the population, the group

4

cannot be "amorphous, overbroad, diffuse, or subjective." *Orellana*, 722 F. App'x at 449 (quoting *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 239 (BIA 2014)); *see also Gomez-Guzman v. Holder*, 485 F. App'x 64, 66–67 (6th Cir. 2012) (rejecting the group "Guatemalan children under the age of fourteen" for a lack of particularity); *Umana-Ramos*, 724 F.3d at 673–74 (rejecting the group "young Salvadorans who ha[ve] been threatened because they refused to join the MS gang" as too broad "because it could include all Salvadoran youth who are not members of the MS gang" (alteration in original)).

Fernandez-Galvan's arguments to the contrary are unpersuasive. First, Fernandez-Galvan argues that her proposed social group shares the immutable characteristic of kinship ties. She relies on this Court's decision in *Toma v. Gonzales*, 179 F. App'x 320, 325 (6th Cir. 2006), in which we reversed an immigration judge's finding that the applicant's family did not constitute a particular social group. In *Toma*, the applicant was a member of a "known family in the minority ethnic group of the Assyrian Party" that had suffered persecution in part because of their "immutable kinship ties to family members who were politically active in the Iraqi resistance." *Id.* at 324–25. The proposed group in *Toma* is easily distinguishable from Fernandez-Galvan's, in that it relies on relation to a specific family subject to persecution rather than the general parental relationship shared by all fathers and children. Such a relationship cannot form the basis for a particular social group without additional narrowing characteristics.

Next, Fernandez-Galvan claims that the BIA did not address whether the harm she suffered rose to the level of persecution. The BIA did address this, however, and found that while Fernandez-Galvan "may be subject to suffering or harm in Honduras because of criminal acts in that country, such harm does not support an asylum claim." This conclusion is supported by substantial evidence on the record. A finding of persecution requires more than "mere

harassment," *Gilaj v. Gonzales*, 408 F.3d 275, 285 (6th Cir. 2005) (per curiam), and typically includes actions such as "detention, arrest, interrogation, prosecution, imprisonment, illegal searches, confiscation of property, surveillance, beatings, or torture." *Haider v. Holder*, 595 F.3d 276, 286–87 (6th Cir. 2010) (quoting *Zacarias v. Gonzales*, 232 F. App'x 458, 462 (6th Cir. 2007)). The one incident in which Fernandez-Galvan's father struck her does not constitute persecution. *See, e.g.*, *Gilaj*, 408 F.3d at 284 ("[W]hile even a single beating offends one's sense of civilized governmental conduct, a single beating does not *compel* a finding of persecution." (quoting *Gjokic v. Ashcroft*, 104 F. App'x 501, 505 (6th Cir. 2004))); *Lumaj v. Gonzales*, 462 F.3d 574, 578 (6th Cir. 2006) ("This one, isolated incident, of limited severity, does not constitute 'persecution.'").

Because Fernandez-Galvan has not shown that she suffered past persecution on account of membership in a particular social group, her asylum claim fails.

## B. Withholding of Removal

To qualify for withholding of removal under Section 241(b)(3) of the Act, Fernandez-Galvan must demonstrate that "it is more likely than not that [she] would be persecuted on account of race, religion, nationality, membership in a particular social group, or political opinion upon removal." 8 C.F.R. § 1208.16(b)(2). This burden is more demanding than what is required for an asylum claim, *Sarr v. Gonzales*, 485 F.3d 354, 362 (6th Cir. 2007), and because Fernandez-Galvan failed to establish eligibility for asylum, she cannot meet the more stringent standard for withholding of removal either, *see Bonilla-Morales*, 607 F.3d at 1139.

## C. CAT Protection

Under the CAT, removal must be withheld if "it is more likely than not that [the applicant] would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2).

Torture is defined as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . when such pain or suffering is inflicted by or at the instigation of, or with the consent or acquiescence of, a public official or other person acting in an official capacity." *Id.* § 1208.18(a)(1).

The BIA did not err in concluding that Fernandez-Galvan failed to demonstrate that it is more likely than not that a public official would torture her, acquiesce, or be willfully blind to her torture if she were removed. Fernandez-Galvan fears harm from her father, who is a private actor, not a government official. And while Fernandez-Galvan testified that the Honduran police "don't really help" in domestic-abuse matters, the police's failure or inability to protect citizens, alone, does not show acquiescence. *See Torres v. Sessions*, 728 F. App'x 584, 589 (6th Cir. 2018) ("[T]he inability of a government to control the alleged perpetrators of torture or successfully eliminate the torture is not alone conclusive of that government's acquiescence."). And a general fear of crime is "not sufficient to establish eligibility for withholding of removal under the CAT." *Palma-Campos v. Holder*, 606 F. App'x 284, 287 (6th Cir. 2015).

## III

For the reasons set forth above, we **DENY** Fernandez-Galvan's petition for review.